1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10 CITY OF SEATTLE, CITY OF NEW YORK,
CITY OF PORTLAND,

11                                                    CIVIL ACTION NO. _____

                            Plaintiffs,

12                                                    **COMPLAINT FOR DECLARATORY
           vs.                                        AND INJUNCTIVE RELIEF**

13

14 DONALD TRUMP, in his capacity as President
of the United States; UNITED STATES OFFICE
OF MANAGEMENT AND BUDGET;
15 RUSSELL VOUGHT, in his capacity as Director
of the Office of Management and Budget;
16 UNITED STATES DEPARTMENT OF
JUSTICE; WILLIAM BARR, in his capacity as
17 United States Attorney General; UNITED
STATES DEPARTMENT OF HOMELAND
18 SECURITY; CHAD F. WOLF, in his capacity as
Acting Secretary of the United States
19 Department of Homeland Security; UNITED
STATES DEPARTMENT OF FEDERAL
20 TRANSIT ADMINISTRATION; K. JANE
WILLIAMS, in her capacity as Acting
21 Administrator of the United Sates Department of
Federal Transit Administration; and the
22 UNITED STATES OF AMERICA,

23                            Defendants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 1

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1

2

## INTRODUCTION

1.      In an act offensive to both the Constitution and common sense, President Trump has called on the Attorney General to formally identify certain American cities as "anarchist jurisdictions"—an oxymoronic designation without precedent in American jurisprudence—and has activated the entire federal bureaucracy to preclude such jurisdictions from receiving federal funds. The cities so designated —Seattle, New York City, and Portland, Oregon (the "Cities")—bring this action to challenge the Defendants' unlawful designation and to enjoin the President's unconstitutional scheme to strip the Cities of federal funding.

2.      On September 2, 2020—after spending months demanding that the Cities to crack down harshly on the racial justice protests that erupted after George Floyd's murder and unilaterally deploying militarized federal agents to police protests in Portland—President Trump issued a Presidential Memorandum titled "Reviewing Funding to State and Local Government Recipients of Federal Funds That Are Permitting Anarchy, Violence, and Destruction in American Cities" (the "Anarchist Memo").

3.       The Anarchist Memo declared it the government's official policy to prevent the flow of federal tax dollars to so-called "anarchist jurisdictions." The Anarchist Memo directed U.S. Attorney General William Barr to formally identify such jurisdictions based on an arbitrary and vague set of factors related to local policing, and further commanded the director of the United States Office of Management and Budget to instruct federal agencies to restrict federal grants to "anarchist jurisdictions" to the maximum extent permitted by law. The Memo does not contain a single legal citation. There is no reference to any constitutional or statutory basis authority for the President to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 2

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

strip federal funding from the Cities when he disagrees with their on-the-ground policing decisions or deems their budgeting choices unwise.

4.      Weeks later, Attorney General William Barr executed the Anarchist Memo's directives and issued a press release designating the Cities as "anarchist jurisdictions" (the "Designation") based on factors which the Cities had not been given any prior notice or an opportunity to dispute. By its terms, the designation was focused on past actions of local governments and law enforcement, and in several instances, was based on demonstrably false factual assertions. Nonetheless, following Barr's designation, federal agencies began following the Memo's directive to punish the Cities by restricting or withholding federal funds. On October 8, 2020, the Federal Transit Administration announced that it will consider applications for a current COVID-19 public transportation research grant "in accordance" with the Anarchist Memo; additional acts to carry out the President's unlawful directive to defund the Cities are imminent.

5.      The Defendants' actions violate bedrock principles of American democracy: separation of powers, federalism, and due process.

6.      In a blatant violation of the separation of powers, the Defendants seek to impose new conditions and restrictions on federal funds that have no statutory basis. The Power of the Purse belongs to Congress, not the Executive Branch.  Executive agencies may only act within the scope of authority granted them by Congress and must engage in reasoned decision-making when they do act; yet they have not done this. No act of Congress gives the Attorney General the authority to designate cities as "anarchist jurisdictions" from which federal funding may be withheld.

7.      And in addition to failing to anchor his decision in any provision of federal law, the Attorney General based his decision, made via a press release, on an arbitrary and capricious list of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 3

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

misleading and cherry-picked bullet-points about each City that in no way supports the assertion that the Cities have chosen to abandon their jurisdictions to lawlessness and violence.

8.     Our Constitution is also built on the principle of federalism, enshrined in the Tenth Amendment, reserving to the states and their localities the power to police their own streets, make their own public safety policy choices, and make determinations about the allocation of their public resources. Defendants' actions trample that constitutional limit as well, imposing an aggressive and extreme threat to strip cities of critical federal funding unless they "reverse course" and capitulate to the President's demands on these paradigmatically local decisions, whatever those demands may be. They do this based on completed events wholly unrelated to the purposes of those federal grants being threatened. In the notice of funding opportunity for the COVID-19 transportation grant, the Administration makes plain that the vague and ambiguous Anarchist Memo is being applied in precisely that unlawful manner.

9.     Defendants' actions also trample core protections of Due Process under the Fifth Amendment. None of the Cities was afforded reasonable and clear notice of what is prohibited, the identified criteria have no clear meaning, and there is no opportunity to be heard with respect to their designation as "anarchist jurisdictions"; nor is there any process to dispute or appeal that consequential, yet wholly subjective, designation.

10.    While the Anarchist Memo and Designation are blatantly unlawful, their consequences—unless blocked by this Court—are deadly serious. The Cities rely on billions of dollars in federal funding to provide a range of vital services, including housing, public transportation, and emergency relief. The funding threat could not come at a worse time, as the COVID-19 pandemic has ravaged municipal finances, draining reserves and forcing painful budget

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 4

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

cuts. The Defendants' express plan to defund "anarchist jurisdictions," if permitted, would be devastating to the Cities.

11. The Anarchist Memo is right about one thing: "Without law and order, democracy cannot function." Anarchist Memo § 1. But it is the Defendants, not the Cities, who are engaging in lawless behavior and threatening the democratic order established by the Framers. The Cities have made nuanced policy choices about how best to protect public safety and property while respecting protesters' rights during times of civil unrest. Their elected representatives have enacted budgets through the lawful legislative process that reflect their views about how best to allocate scarce public resources during a fiscal crisis. Defendants, however, disregard all constitutional limits on their authority as they seek to force cities to adopt the President's vague preferences on policing policies. Democracy demands far better.

12. Accordingly, the Cities seek an order from the Court declaring that the Anarchist Memo, the Designation, and the Federal Transit Administration's incorporation of them into its grant process are unlawful and unconstitutional; vacating the Designation; and enjoining any action by the Defendants to implement the Memo's directives.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201(a). Jurisdiction is also proper under the judicial review provisions of the APA, 5 U.S.C. § 702.

14. Declaratory and injunctive relief is sought consistent with 5 U.S.C. § 706, and as authorized in 28 U.S.C. §§ 2201 and 2202.

15. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) and (e)(1) because Defendants are United States agencies or officers sued in their official capacities, Plaintiff City of Seattle is a resident of this judicial district, and a substantial part of the events or omissions

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 5

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

giving rise to this Complaint occurred and continue to occur within the Western District of Washington.

**PARTIES**

16.     Plaintiff City of Seattle is a municipal corporation and a city of the first class existing under the laws of the State of Washington.

17.     Plaintiff City of New York is a municipal corporation organized pursuant to the laws of the State of New York. The City is a political subdivision of the State of New York and derives its powers through the State Constitution, State laws, and the New York City Charter.

18.     Plaintiff City of Portland is a municipal corporation of the State of Oregon duly organized and existing under the laws of the State of Oregon.

19.     Defendant Donald Trump is the President of the United States.

20.     Defendant the United States Office of Management and Budget ("OMB") is a Cabinet-level department of the U.S. government.  Its stated missions involve assisting the President in meeting his policy, budget, management, and regulatory objectives and fulfilling its statutory responsibilities.

21.     Defendant Russell Vought is the Director of OMB.

22.     Defendant United States Department of Justice ("DOJ") is a Cabinet-level department of the U.S. government.  Its stated missions involve enforcing the law and defending the interests of the United States, public safety, crime control and prevention, fair and impartial administration of justice, and fulfilling other statutory responsibilities.

23.     Defendant William Barr is the United States Attorney General.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 6

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

24.     Defendant the United States Department of Homeland Security ("DHS") is a Cabinet-level department of the U.S. government.  Its stated missions involve anti-terrorism, border security, immigration and customs enforcement, and fulfilling other statutory responsibilities.

25.     Defendant Chad F. Wolf is Under Secretary of Homeland Security for Strategy, Policy, and Plans and also purports to serve as the Acting Secretary of DHS.

26.     Defendant the United States Department of Federal Transit Administration ("FTA") is an agency within the United States Department of Transportation. Its stated missions involve providing financial and technical assistance to local public transit systems, overseeing safety measures, and helping develop technology research, and fulfilling other statutory responsibilities.

27.     Defendant K. Jane Williams is the Deputy Administrator of FTA and serves as its Acting Administrator.

28.     Defendant the United States of America is sued as allowed by 5 U.S.C. § 702.

## FACTUAL ALLEGATIONS

**I.     As Racial Justice Protests Erupted Nationwide, the Cities Made Budgetary Choices in Response to Calls for Police Reform and Responded as Needed to Criminal Behavior.**

29.     After the May 25, 2020 killing of George Floyd by a Minneapolis police officer, protests in support of the Black Lives Matter ("BLM") movement and against anti-Black police violence and systemic racism erupted across the United States and around the world.

30.     The vast majority of these protests have been peaceful. According to a recent U.S. Crisis Monitor report, more than 93% of all demonstrations connected to the BLM movement between late May and late August of this year were peaceful protests.[1]

---

[1] Dr. Roudabeh Kishi & Sam Jones, *Demonstrations & Political Violence in America*, U.S. CRISIS MONITOR, 5 (Sept. 2020) https://acleddata.com/acleddatanew/wp-content/uploads/2020/09/ACLED_USDataReview_Sum2020_SeptWebPDF_HiRes.pdf (last accessed Sept. 28, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 7

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

31.     Nonetheless, some protests, including some in the plaintiff Cities, have coincided with looting, vandalism, and violence. The Cities have responded in various ways depending upon the specific circumstances facing them. But the Cities have all acted in accordance with local laws and the shared goal of ensuring public safety and preventing property damage, while protecting the First Amendment right to peaceful protest.

32.     In New York City, when looting, vandalism, and violence coinciding with protests peaked over a short period in late May and early June 2020, the New York City Police Department ("NYPD") rapidly mobilized its resources, doubling the number of officers on patrol throughout the city. New York City Mayor Bill de Blasio imposed a temporary curfew—the City's first in more than 75 years; in less than a week, the looting, vandalism, and violence was contained.

33.     In Seattle, some violence and looting occurred within days of Mr. Floyd's murder, but was contained. As protests continued, Seattle supported the exercise of First Amendment rights by peaceful protesters in public streets and a park in the Capitol Hill neighborhood of Seattle, which became known as the Capitol Hill Organized Protest ("CHOP"). Within a few weeks, the City cleared the CHOP after determining that criminal and other activity in and around the CHOP necessitated that action. With careful planning and by choosing the appropriate time to intervene, local police cleared the CHOP in a matter of hours without any significant issues or incidents.  As peaceful protests continue on a daily basis in Capitol Hill and other locations around Seattle, the Seattle Police have responded as needed to maintain public safety and address property damage or other criminal behavior during the small portion of protests which have not remained peaceful.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 8

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

34.     In Portland, protests have occurred throughout the city since late May. In response to criminal activity during some of the protests, Portland imposed an 8:00 p.m. curfew on May 30, May 31, and June 1, and the local police have arrested more than 850 people.

35.     In each of the Cities, the response by local police to the protests and to criminal activity has been the subject of public debate among citizens, their local elected officials and local police. Elected officials in the Cities have considered and will continue to consider all the various viewpoints expressed in that debate as they assess local resources and determine the optimal approach for each City.

36.     The Cities have also responded in various ways to calls to "defund" the police that became a feature of the protests beginning in late May. For example, through an annual budgeting process occurring against the backdrop of our current fiscal crisis, Mayor de Blasio and the City Council of New York City shifted approximately $1 billion away from the NYPD's $6 billion dollar annual operating budget by eliminating the next recruiting class, curtailing overtime, and shifting certain functions away from police to civilian agencies.[2] Likewise, the Portland City Council adopted a budget with $15 million in reductions to the Portland police budget, alongside cuts to all other City agency budgets.[3] In all three cities, the public debate has included calls for more significant cuts or for none at all, and the responsible, accountable local officials considered those calls in determining how best to allocate public resources.

---

[2] *De Blasio on Shifting $1 Billion From NYPD: "We Think it's the Right Thing to Do"*, NAT. PUBLIC RADIO, (July 1, 2020) https://www.npr.org/sections/live-updates-protests-for-racial-justice/2020/07/01/886000386/de-blasio-on-shifting-1-billion-from-nypd-we-think-it-s-the-right-thing-to-do (last accessed Oct. 17, 2020).  "The mayor also noted that $500,000 that was earmarked for NYPD major projects will now be redirected to youth centers and expanded access to high speed internet for public housing residents, something he called "a huge reinvestment in communities while we still stay safe as a city." *Id.*

[3] Highlighting the arbitrary application of the Anarchist Memo criteria, Seattle's $19.7 million reduction of its Police Department 2020 budget was not mentioned as a basis for Seattle's Designation, while defunding was a basis for the other two Cities.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 9

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

## II.    The Cities Reject the Deployment of Federal Law Enforcement Agents to Police Local Protests.

37.    While the Cities were making nuanced, fact driven decisions about how best to protect public safety while preserving First Amendment freedoms, and making police budgeting decisions through the legislative process, the President announced that he endorsed and intended to impose on Cities, an aggressive, militaristic response to the Floyd protests. On May 30, Trump tweeted that if protesters had breached the White House fence, they "would have been greeted with the most vicious dogs, and most ominous weapons, I have ever seen. That's when people would have been really badly hurt, at least."[4] Later that day, Trump tweeted: "Liberal Governors and Mayors must get MUCH tougher or the Federal Government will step in and do what has to be done, and that includes using the unlimited power of our Military and many arrests."[5]

38.    In early July 2020, federal law enforcement officers in military style battle dress uniforms were deployed on the streets of Portland.[6] While purportedly present to protect federal property, the federal officers advanced from positions on or close to federal property, escalated tensions and increased the risks of violence. The U.S. Crisis Monitor found that prior to that deployment, "over 83% of demonstrations in Oregon were non-violent. Post-deployment, the

---

[4] Donald J. Trump,@realDonaldTrump, TWITTER, 8:41 AM, May 30, 2020, https://TWITTER.com/realDonaldTrump/status/1266711223657205763.
[5] Donald J. Trump,@realDonaldTrump, TWITTER, 2:20 PM, May 30, 2020, https://TWITTER.com/realDonaldTrump/status/1266796670609588225.
[6] The arrival of federal agents in Portland occurred within days of President Trump indicating through an Executive Order that federal intervention was warranted to police local protests, especially those expressing political viewpoints disfavored by the Administration. On June 26, 2020, President Trump signed Executive Order 13933, "Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence" (the "Executive Order"). 85 Fed. Reg. 40081 (July 2, 2020). The Executive Order criticizes the handling of protests by state and local governments—all led by Democrats—and further faults state and local governments for not imposing on its citizens the view that "America is good, her people are virtuous, and that justice prevails in this country to a far greater extent than anywhere else in the world," and suggests that some state and local public officials have "accepted the idea that violence can be virtuous." 85 Fed. Reg. at 40,082.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 10

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

percentage of violent demonstrations has risen from under 17% to over 42% [in Oregon], suggesting that the federal response has only aggravated unrest."[7] Local and state officials objected to the presence of the federal agents and the Oregon Attorney General challenged the deployment in federal court. Finally, in late July, the Federal Government reached an agreement with state officials to withdraw from the streets of Portland.[8]

39.    Federal officers were deployed to Seattle on July 23, 2020. In a July 24 communication to DHS and DOJ, among other federal agencies, Seattle and King County, Washington elected officials questioned the purpose and scope of this expanded federal presence, and expressly rejected federal intervention in domestic law enforcement.[9] When federal officials were asked by Seattle officials to identify any civil rights needs in Seattle that were purportedly unmet by local officials, DHS responded that the additional federal agents had been sent only as a temporary precaution because of prior vandalization of the federal Courthouse in Seattle, and were there only to protect federal property.  The additional federal agents departed within days of arrival in Seattle.

40.    However, media reports have made clear that the Executive branch was not focused exclusively on federal property protection. Upon information and belief, Defendant Barr raised with other DOJ officials his desire to bring criminal charges against Seattle Mayor Jenny Durkan and Portland local officials, including Mayor Ted Wheeler, based on his dissatisfaction with how local officials addressed local protests.

---

[7] *US Crisis Monitor*, *supra* note 2, 10–11 (last accessed Sept. 28, 2020).
[8] Mike Baker & Zolan Kanno-Youngs, *Federal Agencies Agree to Withdraw from Portland, with Conditions*, N.Y. TIMES (July 29, 2020) https://www.nytimes.com/2020/07/29/us/protests-portland-federal-withdrawal.html (last accessed Sept. 28, 2020).
[9] The Seattle communication acknowledged that there were existing joint federal and local law enforcement endeavors and task forces but reminded the federal agencies that "local crime has traditionally and appropriately been addressed by local authorities […] in accord with the discretion and judgment of our locally elected leaders."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 11

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

41.     The President also threatened to deploy federal law enforcement to other Democratic-led cities, including New York, Chicago, Philadelphia, Detroit, Baltimore, and Oakland—that he characterized as "all run by very liberal Democrats. All run, really, by radical left."[10] In response, New York City's Mayor and Police Commissioner rejected the threatened deployment.[11]

42.     The President stated on Fox News that he was prepared to send up to 75,000 federal officers to police American cities.[12] He added the caveat that "we have to be invited in," but then warned, "At some point we'll have to do something much stronger than being invited in."[13]

### III.   President Trump Issues a Presidential Memorandum Calling for the Designation and Defunding of "Anarchist Jurisdictions."

43.     On September 2, 2020, President Trump took "much stronger" action to force the Cities to invite federal agents to police their streets by issuing a Presidential Memorandum titled "Reviewing Funding to State and Local Government Recipients of Federal Funds That Are Permitting Anarchy, Violence, and Destruction in American Cities" (the "Anarchist Memo" or "Memo").

44.     The Anarchist Memo declares it the official "policy and purpose of the United States Government" not to "allow Federal tax dollars to fund cities that allow themselves to deteriorate into lawless zones." Anarchist Memo § 1. The Memo claims that certain cities have descended into "anarchy" by "failing to enforce the law, disempowering and significantly defunding police

---

[10] *Remarks by President Trump on Phase Four Negotiations – Economy & Jobs*, WHITEHOUSE.GOV (July 20, 2020, 11:07 AM) https://www.whitehouse.gov/briefings-statements/remarks-president-trump-phase-four-negotiations/ (last accessed Sept. 28, 2020).
[11] Lauren Cook & Aliza Chasan, *NYPD Doesn't Need Trump, Federal Authorities to Combat Shootings, Commissioner Says*, PIX 11 (July 21, 2020, 11:12 AM) https://www.pix11.com/news/local-news/nypd-doesnt-need-trump-federal-authorities-to-combat-shootings-commissioner-says (last accessed Sept. 29, 2020).
[12] Kevin Liptak & Caroline Kelly, *Trump Says He Could Send as Many as 75,000 Federal Agents to U.S. Cities*, CNN (July 23, 2020, 10:58 PM) https://www.cnn.com/2020/07/23/politics/trump-federal-agents-us-cities/index.html (last accessed Sept. 28, 2020).
[13] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 12

departments, and refusing to accept offers of Federal law enforcement assistance." *Id.* The Anarchist Memo names the Cities as well as Washington, D.C., as examples of anarchist jurisdictions to be stripped of federal funding.

45.     The Anarchist Memo directs the Attorney General, the OMB Director, and the DHS Secretary to take specific steps to "advance the policy" of blocking federal funding to such cities.

46.     First, the Anarchist Memo directs the Attorney General, in consultation with the DHS Secretary and the OMB Director, to publish on the DOJ website a list of jurisdictions "that have permitted violence and the destruction of property to persist and have refused to undertake reasonable measures to counteract these criminal activities (anarchist jurisdictions)." Anarchist Memo § 3(a). The Memo directs the Attorney General to update the list at least every six months. *Id.*

47.     The Anarchist Memo enumerates a non-exclusive list of factors that Attorney General Barr "shall consider as appropriate" in creating the list of so-called anarchist jurisdictions:

> (i)     whether a jurisdiction forbids the police force from intervening to restore order amid widespread or sustained violence or destruction;
>
> (ii)    whether a jurisdiction has withdrawn law enforcement protection from a geographical area or structure that law enforcement officers are lawfully entitled to access but have been officially prevented from accessing or permitted to access only in exceptional circumstances, except when law enforcement officers are briefly withheld as a tactical decision intended to resolve safely and expeditiously a specific and ongoing unlawful incident posing an imminent threat to the safety of individuals or law enforcement officers;
>
> (iii)   whether a jurisdiction disempowers or defunds police departments;
>
> (iv)    whether a jurisdiction unreasonably refuses to accept offers of law enforcement assistance from the Federal Government; and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 13

(v) *any other related factors the Attorney General deems appropriate*.

*Id.* § 3(b) (emphasis added).

48.     The Memo does not define any of the vague terms and phrases that these factors turn on, such as "forbids the police force from intervening," "withdrawn law enforcement protection," ""briefly withheld," "disempowers," "defunds," and "unreasonably refuses." The Memo does not cite any statutory basis for the designation and provides no mechanism for jurisdictions designated as "anarchist" to dispute the designation.

49.     The Memo also directs the OMB Director to issue guidance to the heads of all executive agencies for each agency to submit a report to OMB detailing *all* federal funds provided by that agency to Portland, Seattle, New York City, and Washington, D.C. Anarchist Memo § 2.

50.     Lastly, the Anarchist Memo directs the OMB Director to issue "guidance to the heads of agencies on restricting eligibility of or otherwise disfavoring, to the maximum extent permitted by law, anarchist jurisdictions in the receipt of Federal grants that the agency has sufficient lawful discretion to restrict or otherwise disfavor the anarchist jurisdictions from receiving." *Id.* § 3(c). Per the Memo, this guidance was to be issued on October 2. *Id.*

51.     Federal officials made contemporaneous statements giving notice that the Trump Administration intends to follow through with the Memo's promises to revoke federal funding from cities he deems anarchist. For example, the day he issued the Anarchist Memo, President Trump tweeted, "My Administration will do everything in its power to prevent weak mayors and lawless cities from taking Federal dollars while they let anarchists harm people, burn buildings, and ruin lives and businesses. We're putting them on notice today. @RussVought45."[14] Two days later, in a White

---

[14] Donald J. Trump, @realDonaldTrump, TWITTER, 8:27 PM, Sept. 2, 2020, https://Twitter.com/realDonaldTrump/status/1301315810485579776.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 14

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

House press briefing, President Trump doubled down on his threat to defund the Cities, stating "we're holding back funds . . . until they get their act together."[15]

### IV.     The Attorney General Designates the Cities as "Anarchist Jurisdictions."

52.     On September 21, 2020, pursuant to the Anarchist Memo, DOJ published a press release on its website identifying the Cities as jurisdictions "that have permitted violence and destruction of property to persist and have refused to undertake reasonable measures to counteract criminal activities," i.e. "anarchist jurisdictions" as defined in the Anarchist Memo.[16] In the press release, Attorney General Barr stated that he "hoped" the Cities would "reverse course" as a result of the threat to their vital funding.[17]

53.     DOJ provided the following bases for designating each of the Cities as an anarchist jurisdiction:

**New York City**

- Shootings in New York City have been on the rise since looting and protests began on or about May 28, 2020. For July 2020, shootings increased from 88 to 244, an increase of 177% over July 2019. In August 2020, shootings increased from 91 to 242, a 166% increase over August 2019.
- While the city faced increased unrest, gun violence, and property damage, the New York City Council cut $1 billion from NYPD's FY21 budget.
- The budget resulted in the cancellation of the new police recruiting class, cuts to overtime spending, and the transfer of certain police functions, including school safety, out of the NYPD.
- Meanwhile, the Manhattan and Brooklyn District Attorneys have declined to prosecute charges of disorderly conduct and unlawful assembly arising from the

---

[15] *Remarks by President Trump in Press Briefing*, WHITEHOUSE.GOV (Sept. 4, 2020, 5:45 PM) https://www.whitehouse.gov/briefings-statements/remarks-president-trump-press-briefing-september-4-2020/ (last accessed Sept. 28, 2020).

[16] *Department of Justice Identifies New York City, Portland and Seattle as Jurisdictions Permitting Violence and Destruction of Property*, DEP'T OF JUSTICE, OFFICE OF PUBLIC AFFAIRS (Sept. 21, 2020) https://www.justice.gov/opa/pr/department-justice-identifies-new-york-city-portland-and-seattle-jurisdictions-permitting (last accessed Sept. 28, 2020).

[17] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 15

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

protests, and the District Attorneys in Queens and the Bronx have declined to prosecute other protest-related charges.

- Both Mayor de Blasio and Governor Cuomo have forcefully rejected federal law enforcement support.

**Portland, Oregon**

- This month, Portland marked 100 consecutive nights of protests marred by vandalism, chaos, and even killing.
- Those bent on violence regularly started fires, threw projectiles at law enforcement officers, and destroyed property. Numerous law enforcement officers, among others, suffered injury.
- Shootings increased by more than 140% in June and July 2020 compared to the same period last year.
- In the midst of this violence, the Portland City Council cut $15 million from the police bureau, eliminating 84 positions. Crucially, the cuts included the Gun Violence Reduction Team, which investigates shootings, and several positions from the police team that responds to emergency incidents.
- In August, Portland Mayor Wheeler sent a letter to President Trump expressly rejecting the Administration's offer of federal law enforcement to stop the violent protests.

**Seattle, Washington**

- For nearly a month, starting in June, the City of Seattle permitted anarchists and activists to seize six square blocks of the city's Capitol Hill neighborhood, naming their new enclave the "Capitol Hill Autonomous Zone" (CHAZ) and then the "Capitol Hill Occupied Protest" (CHOP).
- Law enforcement and fire fighters were precluded from entering the territory. The Seattle Police Department was ordered to abandon their precinct within the CHOP.
- Person-related crime in the CHOP increased 525% from the same period of time in the same area the year before, including by Mayor Durkan's own count "two additional homicides, 6 additional robberies, and 16 additional aggravated assaults (to include 2 additional non-fatal shootings)."
- The CHOP was allowed to stand for nearly a month, during which time two teenagers were shot and killed in the zone.
- The Seattle City Council, Mayor Durkan, and Washington Governor Jay Inslee publicly rejected federal involvement in law enforcement activities within the city of Seattle.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 16

54.    The sole common factor for designating each City as "anarchist" was the "rejection" federal law enforcement to police the Cities' streets, even though federal assistance had never been officially defined or offered to any of the Cities.

55.    That same day, in accordance with section 2 of the Anarchist Memo, OMB published guidance directing federal agencies to submit "a detailed spending report" to OMB by October 16, 2020, identifying all federal funding to the Cities and Washington D.C.[18] OMB directed the agencies to include in the report all federal funding sources, "including grants, loans, contracts, and other monetary award[s]" provided to these cities and their components for fiscal years 2018, 2019, and 2020, including funds issued to these cities through sub-granting and sub-allocation from another entity such as a State.[19]  With respect to fiscal year 2021, OMB directed agencies to report estimated amounts.[20]  OMB directed the agencies to identify which of these grants pertained to law enforcement, indicating that "such programs and activities, when properly designed and implemented, can help prevent the deterioration of municipalities into lawless zones."[21]

56.    Federal agencies have carried out this directive. For example, the Department of Health and Human Services reportedly has identified more than 1,500 grant awards made to the Cities and Washington, D.C. under 185 different grant programs.[22] These grants include funding for newborn hearing screenings, drug addiction and recovery services, care for COVID-19 patients at

---

[18] Russell T. Vought, *Memorandum to the Heads of Executive Departments and Agencies*, EXEC. OFFICE OF THE PRESIDENT, OFFICE OF MANAGEMENT AND BUDGET (Sept. 21, 2020) https://www.whitehouse.gov/wp-content/uploads/2020/09/M-20-36.pdf (last accessed Sept. 28, 2020).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] Brianna Ehley, Rachel Roubein, *White House looks at cutting COVID Funds, Newborn Screenings in 'Anarchist' Cities*, POLITICO PRO (Oct. 20, 2020), *available at* https://subscriber.politicopro.com/budget-appropriations/article/2020/10/white-house-looks-at-cutting-covid-funds-newborn-screenings-in-anarchist-cities-2011623 (last accessed Oct. 20, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 17

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

community and migrant health centers, and nutrition and mental health counseling for the elderly.[23] OMB has not yet issued the guidance called for in section 3(c) of the Anarchist Memo, "on restricting eligibility of or otherwise disfavoring, to the maximum extent permitted by law, anarchist jurisdictions in the receipt of Federal grants."

57.     But while official guidance has not been forthcoming, OMB Director Vought stated during a September 22, 2020 interview on Fox News that his agency is "looking at every grant program in which we have discretionary authority," including "community economic development and public transportation grants."[24] In the same interview, Defendant Vought stated that OMB is looking to insert "lawlessness" as a condition upon which the federal government will deny grant eligibility. To further ensure that this defunding threat reached a broad audience, Vought embedded the interview in a tweet that he sent out to his followers, stating: "It's simple. We are not going to allow hard-earned taxpayer dollars to go to a community that is on fire. If you don't stand with law enforcement, if you don't protect families and businesses, and you promote lawlessness—you're not going to get taxpayer dollars."[25]

---

[23] *Id.*

[24] Russ Vought, @RussVought45, TWITTER, (9:54 AM, Sept. 22, 2020) https://TWITTER.com/RussVought45/status/1308404322837901313?s=20.

[25] *Id.* That same day, the Administrator of the U.S. Environmental Protection Agency Andrew R. Wheeler threatened to relocate its regional office out of Lower Manhattan in New York City, citing protest activity that occurred two months prior and a recent incident in which protesters had allegedly broken a turnstile door to enter the lobby of 26 Federal Plaza, a neighboring federal building. Ebony Bowden, *EPA Boss Rips Cuomo, de Blasio over Protests, Threatens to Relocate NYC Office,*, NY POST (Sept. 22, 2020, 12:30 PM) https://nypost.com/2020/09/22/epa-boss-blames-cuomo-de-blasio-for-occupy-city-hall-protests/ (last accessed Sept. 28, 2020); Dana Rubinstein & Alan Feuer, *Trump Uses EPA Office to Widen 'Anarchist' War vs. New York*, N.Y. TIMES (Sept. 22, 2020) https://www.nytimes.com/2020/09/22/nyregion/trump-epa-anarchist-jurisdiction.html?referringSource=articleShare (last accessed Sept. 28, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 18

**V.     The Federal Government Begins Imposing the Anarchist Memo and Designation as a Grant Consideration.**

58.     On October 8, 2020, the FTA published a Notice of Funding Opportunity incorporating the Anarchist Memo into the criteria for selecting recipients of $10 million in "research demonstration grants for public transit agencies to develop, deploy, and demonstrate innovative solutions that improve the operational efficiency of transit agencies, as well as enhance the mobility of transit users affected by the COVID-19 public health emergency."[26] Although this new "Public Transportation COVID–19 Research Demonstration Grant Program" has nothing to do with the factors discussed in the Anarchist Memo or the Attorney General's Anarchist Designations, the Notice announced that the federal government "will review and consider applications for funding pursuant to this Notice in accordance with the [Anarchist Memo]."[27]

59.     In a statement to the press regarding the inclusion of this consideration in the grant announcement, the Transportation Department stated: "Presidential directives are not discretionary."[28]

60.     The Notice of Funding Opportunity establishes that the Trump Administration is taking concrete steps to carry out its unlawful threat to cut federal funding to the Cities. The Cities would be hard-pressed to reach any conclusion other than that we must "reverse course" and allow federal law enforcement to usurp our policing and public safety authority or risk being stripped of

---

[26] Competitive Funding Opportunity: Public Transportation COVID–19 Research Demonstration Grant Program, 85 Fed. Reg. 63653 (Oct. 8, 2020).

[27] *Id.* Local agencies have until November 2, 2020 to apply for this grant program.

[28] Michael Laris, *Administration Wants to Exclude 'Anarchist Jurisdictions' from Coronavirus Safety Grant*, WASHINGTON POST (Oct. 15, 2020) (last accessed Oct. 21, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 19

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

federal funding at a time when the Cities and their residents are grappling with fiscal crises triggered by the COVID-19 pandemic.[29]

## VI.    The Designation Harms the Cities by Putting Our Federal Funding in Imminent Risk at a Time of Fiscal Crisis and Creating Budgetary Uncertainty

61.    Defendants' unlawful scheme to strip federal funds from the Cities harms the Cities in multiple ways. First, as the FTA's recent Notice of Funding Opportunity demonstrates, the Federal Government has already started restricting federal grants to "anarchist jurisdictions" and, under the Anarchist's Memo's timeline, the restriction of additional federal grants is imminent. Collectively, the Cities rely on billions of dollars in federal grants which support local efforts to provide affordable housing and disaster relief, among other essential services. Stripping those funds would be devastating. Second, the broad defunding threat posed by the Anarchist Memo and Designation has injected significant uncertainty into the Cities' budgeting processes. Both of these harms are exacerbated by the COVID-19 pandemic, which has already placed the Cities' finances under extraordinary strain.

### a.    The COVID-19 pandemic is already straining the Cities' finances.

62.    Each of the Cities faces severe economic uncertainty as a result of the COVID-19 pandemic. In Portland, the pandemic has already caused a $75 million loss in general fund revenue for fiscal year 2020–21, resulting in wage freezes and furlough requirements for certain City employees.

63.    In its financial plan released June 30, 2020 (the "June 2020 Financial Plan"), New York City lowered its tax revenue forecast by a total of $9 billion in fiscal years 2020 and 2021

---

[29] *See New York v. Trump*, No. 20-CV-5770 (RCW) (PWH) (JMF), ___ F.Supp.3d. __, 2020 U.S. Dist. LEXIS 165827, at *98 (S.D.N.Y. Sep. 10, 2020) (courts "must and do presume that" federal agencies "will abide by the President's directives and work diligently to help" carry them out "to the maximum extent possible") (quoting *United States Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001)).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 20

compared to its financial plan issued in January 2020, necessitating severe budget cuts in services, and possible layoffs of thousands of city government employees. New York City has also been forced to use $2.75 billion dollars from its reserves in fiscal year 2021 in addition to the $1.28 billion it used in fiscal year 2020.

64.     Combining General Fund losses with other revenue streams such as admissions tax, real estate excise tax, and short-term rental tax, Seattle's budget office projects a decline of $316 million relative to the 2020 Adopted Budget. Seattle implemented drastic measures to reallocate fiscal resources, including the elimination of non-essential, non-personnel discretionary spending and discretionary overtime, as well as a hiring freeze, but these measures by no means bridge the gap.

**b.      The Cities rely on billions of dollars of federal funds.**

65.     The loss of federal funds as promised by the Defendants' actions would be devastating to the Cities' budgets, particularly amidst the current economic crisis.

66.     Seattle has consistently received significant federal funding over the years. For example, Seattle received a total of $246,020,759.35 in federal funds and grants in 2017, 2018, and 2019, more than half of which were used to fund Seattle's Human Services Department ("HSD"). Federal funding is a significant portion of Seattle's overall $5.5 billion 2020 Adopted Budget. Seattle has budgeted for over $236 million in federal grants for the fiscal year. For COVID-19 response in 2020 and beyond, it was awarded $177 million of federal grants. These federal grants largely consist of grants for social programs, transportation, and Coronavirus Aid. In 2020, approximately 14% of the Transportation Department's funding is from federal sources, as is almost a quarter of the HSD budget, which provides critical safety-net services for the most vulnerable residents. Seattle received over $18 million in Community Development Block Grant funds. Seattle has also been granted over $3.8 million from the Emergency Solutions Grant Program, about $3.4 million from the Home

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 21

Investment Partnerships Program, and over $3.3 million from the Housing Opportunities for Persons with AIDS in 2020.

67.     In its June 2020 Financial Plan, New York City projected federal grant funding totaling approximately $12.487 billion in fiscal year 2020, representing 12.8% of New York City's fiscal year 2020 projected revenues of approximately $97.76 billion. The majority of this federal funding was for social services, housing, education, and emergency relief. For example, in fiscal year 2020 New York City was granted approximately $3.3 billion for social services, $2.1 billion for education, $947 million in community development block grants, and $588 million for affordable housing. In addition, New York City was granted $2.65 billion in COVID-19-related funding from the Federal Emergency Management Agency ("FEMA"), only $199.6 million of which has been received to date.  These FEMA grant funds are not the only federal funds that New York City was granted and has yet to receive.

68.     The full award amount of Portland's active federal grants is over $340 million in federal grants for fiscal year 2020–21. This funding is a significant portion of Portland's overall $5.6 billion budget for this time period. These federal grants largely consist of grants for social programs, transportation, and Coronavirus Aid. For example, Portland received over $47 million in Community Development Block Grant funds. Portland also receives over $18 million from the Emergency Solutions Grant Program, over $19 million from the Home Investment Partnerships Program, and over $3 million from the Housing Opportunities for Persons with AIDS. These funding sources provide essential funding for affordable housing and services to address homelessness. The services funded by these grants are particularly crucial since Portland has been addressing a housing emergency since 2016. The impacts from the lack of affordable housing and the high levels of homelessness have been increased as Portland's houseless residents face risks from COVID-19. In

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 22

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

addition, Portland was allocated over $114 million from the CARES Act Coronavirus Relief Fund. This money has been critical in addressing the public health crisis arising from COVID-19 and the severe economic impacts of the crisis on many small businesses and residents.

            **c.**      **Defendants' actions have caused severe budget uncertainty to the Cities.**

69.      In addition to causing imminent harm from the impending loss of federal grant funding, Defendants' actions have also harmed the Cities by issuing an ultimatum that causes tremendous uncertainty with no recourse. Even if he Cities decided to have the "anarchist" designation lifted by "revers[ing] course" and capitulating to the Executive branch's demands, the Memo provides no guidance as to what that might look like and how, procedurally, it might be accomplished. Alternatively, the Cities can govern themselves, as the Constitution provides, and lose critical federal funding.

70.      If a City rejects the Federal Government's unlawful ultimatum, it is stranded in a Hobson's choice: either trim its budget and cut services in anticipation of illegal federal funding cuts due to the anarchist designation, or keep in its budget the federal funding to which it is entitled and maintain spending at commensurate levels, but risk being forced to address an emergency shortfall if the federal government cuts that funding. Under relevant state and local laws, the Cities are required to maintain a balanced budget.[30] This means that if a City loses federal funding, it must also cut a commensurate amount in spending, this at a time when the Cities are already facing revenue shortfalls due to the COVID pandemic. Thus, federal funding cuts would require the Cities to immediately implement severe spending reductions.

71.      One example of how this Hobson's choice plays out is federal funding provided on a reimbursement basis, in which a city first expends funds to provide programs and services that the

---

[30] *See, e.g.,* New York State Unconsolidated Laws § 5410; NYC Charter, Ch. 10, § 225; ORS 294.388.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 23

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Federal Government has agreed to reimburse, and then submits a claim for reimbursement. Much of the Cities' federal funding is provided on this basis. Because the Designation raises significant doubts as to whether the Federal Government will make those reimbursements, a City designated as an "anarchist jurisdiction" must choose whether to continue spending funds and incurring costs to provide services to its residents and risk being denied reimbursements, or immediately discontinue essential services to avoid the risk of fiscal shock from having reimbursement denied. Either way, the Cities suffer budgetary uncertainty that has a concrete effect on their local economies that is directly traceable to the Anarchist Memo and Designation.

72.     Budgetary uncertainty is worsened by Defendant Vought's decision to direct federal agencies to report to OMB all federal funding issued to the Cities going back to 2018. This raises the specter not only of future funding cuts, but of clawbacks of previously disbursed funds, as well as the denials of funds that have already been allocated to the Cities but not yet disbursed.

73.     The harm from this budgetary uncertainty is imminent. For example, Portland will begin to prepare its budget for fiscal year 2021–22 in December 2020. The budget process starts with the general fund revenue forecast followed by City bureaus submitting their requested budget. Portland's City Budget Office publishes an analysis of the bureaus' requests after which the Mayor's proposed budget is released. After consideration by the budget committee, the City Council will adopt the budget in June 2021. The threatened federal funding restrictions will cause significant uncertainty for the upcoming fiscal year's budgeting process, as Portland will not be able to make fully informed fiscal decisions with the threat of federal funding being revoked. In New York City, while the fiscal year budget was adopted on July 1, 2020, it will be updated in November 2020 as part of the quarterly budget review process. Seattle is currently attempting to finalize its 2021 budget and faces a similar dilemma.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 24

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**VII.    Designation of the Cities as Anarchist Jurisdictions Violates the Administrative Procedure Act**

74.    The Designation of the Cities as anarchist jurisdictions violates the Administrative Procedure Act ("APA") and therefore must be vacated.

75.    The APA directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A)(B)(C). The Designation violates all these provisions.

a.    **The Attorney General lacks statutory authority to make the Designation.**

76.    An agency, such as DOJ, "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Com. v. FCC*, 476 U.S. 355, 374 (1986).

77.    The Designation, made by the Attorney General in consultation with Defendants Vought and Wolf, alters the implementation of countless federal funding statutes by blocking or disadvantaging the Cities with respect to the receipt of federal funds. Yet, neither the Anarchist Memo nor the Designation cite any statutory authority for the factors applied in designating "anarchist jurisdictions," or for the Attorney General to designate jurisdictions as "anarchist" for the purpose of restricting federal funding. That is because there is none. *See* 28 U.S.C. §§ 501, *et seq.*

78.    Republicans in the Senate and the House introduced legislation to require federal agencies to restrict funds to jurisdictions deemed "anarchist," but Congress rejected the legislation.[31]

---

[31] 4085, 116th Cong., *End Taxpayer Funding of Anarchy Act* (introduced on June 25, 2020 in Committee on Finance) *available at* https://www.congress.gov/bill/116th-congress/senate-bill/4085/titles?r=3&s=5 (last accessed Sept. 28, 2020); H.R. 7285, 116th Cong., *CHOPping Cash for CHAZ Act of 2020*, (introduced on June 22, 2020 in Committee on Oversight and Reform) *available at* https://www.congress.gov/bill/116th-congress/house-bill/7285/text (last accessed Sept. 28, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 25

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

By issuing the Anarchist Memo, the President attempts to impose by executive fiat funding conditions rejected by Congress. There is simply no statutory basis for the Attorney General's actions. The Designation is a paradigmatic of an agency action taken "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(C).

        **b.**     **The Designation arbitrarily and unlawfully relies on criteria not intended by Congress.**

79.     Untethered to any legal authority, the criteria provided in the Anarchist Memo are arbitrary and capricious in that they are not based on any conditions or factors that Congress intended to be considered for designating a jurisdiction as "anarchist."

80.     Rather, the Attorney General relied on the enumerated criteria from the Anarchist Memo in making the Designation.

81.     Accordingly, the Attorney General impermissibly employed factors that he may not consider in making the Designation.

        **c.**     **The Designation is premised on arbitrary criteria and supplies justifications that run counter to the evidence and fail to even plausibly support its conclusions.**

82.     The Designation is arbitrary and capricious because (a) it employs undefined, subjective criteria that do not relate to the question of whether the Cities have abandoned governance for anarchy; and (b) it is based on justifications that are contradicted by the facts and do not establish that the Cities have abandoned governance for anarchy.

83.     As an initial matter, the Designation is based on vague and undefined criteria that do not relate to the question of whether the Cities have "permitted violence and destruction of property to persist and have refused to undertake reasonable measures to counteract criminal activities." Anarchist Memo § 3(a).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 26

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

84.     The Anarchist Memo's "factors" for identifying "anarchist jurisdictions" call for an assessment of whether a jurisdiction refuses to allow law enforcement to "restore order," "unreasonably" refuses federal enforcement assistance, "disempowers" the police, or "defunds" its police department. But neither the Memo nor the Designation defines these terms or provides any objective standard by which to gauge the Cities' compliance with these nebulous factors. In fact, the Memo permits the Attorney General to designate a jurisdiction as "anarchist" based on "any other related factors [he] deems appropriate." Anarchist Memo § 3(b)(v).

85.     In short, the criteria the Attorney General has applied provide no objective standard for deeming a jurisdiction "anarchist" other than Attorney General Barr's disagreement with a jurisdiction's lawful policing and budget decisions.

86.     In addition to applying irrational criteria, the Attorney General has offered irrational justifications for the Designation. The actual justifications the Attorney General provided for designating each of the Cities as "anarchist" are contradicted by the facts, fail to consider important aspects of the alleged problem of "anarchy," and fail to plausibly support the conclusion that the Cities have "permitted violence and destruction of property to persist and have refused to undertake reasonable measures to counteract criminal activities."

87.     For example, the Designation relies on claims of increases in shootings and violent activities occurring during protests. Yet the Designation ignores that the Cities have not "permitted" violence to persist, but have taken action to maintain public safety during the protests, including by imposing curfews, mobilizing police resources, taking police action, and making arrests.

88.     Further, the Designation arbitrarily focuses on a single crime statistic—shootings—over a short period of time and makes no effort to show that those increases are persistent or widespread, that the resulting crime rates in the designated Cities are higher than those in other non-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 27

designated cities, or that the cited increases have been caused by the Cities "permit[ting] violence and destruction of property to persist." Anarchist Memo § 3. To the contrary, the murder rate in 2020 has significantly increased nationwide in 2020 and the three designated Cities actually have among the lowest murder rates among major cities in 2020.[32] Moreover, in Portland, criminal offenses overall were lower in June and July of 2020 when compared with June and July of 2019, as were the number of assaults. Similarly, the rate of major felonies in New York City is down in 2020 compared to 2019, and the City remains on track for a year of historically low crime rates.[33] In Seattle, reported major crime was lower in May, June, July and August in 2020 than in 2019.  Overall, major crime is down 3% (year to date) in Seattle in 2020 than in 2019.

89.     The justification based on funding cuts to local police departments—cited for only New York City and Portland—is equally irrational. The Designation ignores the fact that these cuts have come at a time of fiscal crisis, necessitating budget reductions to numerous city agencies. Further, the Designation ignores the fact the NYPD remains the largest, best funded police department in the country with an annual operating budget of approximately $5 billion.[34] Moreover, the Designation does not even attempt to explain how these legitimate local policy decisions have caused "anarchy" in Portland and New York. Indeed, the Designation ignores that it is local government, not the Attorney General or the President, that has the local expertise necessary to make

---

[32] Jeff Asher, *Murders are Rising. Blaming a Party Doesn't Add Up,* N.Y. TIMES (Sept. 28, 2020), https://www.nytimes.com/2020/09/28/upshot/murders-2020-election-debate.html?referringSource=articleShare (last accessed Oct. 1, 2020)

[33] *Report Covering the Week 9/14/2020 Through 9/20/2020,* NYPD COMSTAT UNIT (Vol. 27 No. 38) https://www1.nyc.gov/assets/nypd/downloads/pdf/crime_statistics/cs-en-us-city.pdf (last accessed Sept. 28, 2020); *Seven Major Felony Offenses,* NYC.GOV, https://www1.nyc.gov/assets/nypd/downloads/pdf/analysis_and_planning/historical-crime-data/seven-major-felony-offenses-2000-2019.pdf (last accessed Sept. 28, 2020).

[34] *Was the NYPD Budget Cut by $1 Billion?,* CITIZENS BUDGET COMMISSION (August 13, 2020) https://cbcny.org/research/was-nypd-budget-cut-1-billion (last accessed Oct. 17, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 28

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

optimal decisions regarding budgeting, staffing, hiring, and programmatic priorities. It is because of each City's ability to leverage its local expertise that their police departments are able to continue to effectively maintain public safety, protect property, and combat crime.

90.     The Designation also arbitrarily relies on a claim that the Cities' have rejected federal law enforcement. This is a fiction. The Cities have not issued blanket rejections of federal law enforcement support. In fact, the Cities engage in various local-federal law enforcement partnerships, such as task forces to combat a range of criminal activity.[35] The Cities have simply asserted their right to say when and where that support is needed or would be helpful to their exercise of the police power constitutionally reserved to states and localities.

91.     Next, the Designation relies, with respect to New York City, on certain district attorneys' prosecutorial choices. But contrary to the Designation's suggestion, these and other district attorneys in New York City have prosecuted criminal activities in connection with protests. Further, the Designation fails to explain how a district attorney's exercise of prosecutorial discretion can be considered evidence of anarchy. Moreover, the Designation ignores that New York City has no control over the decisions of district attorneys who are independent, elected officials.[36]

---

[35] For example, New York City works with federal law enforcement agents in a number of task forces, including, *inter alia*:  Joint Terrorist Task Force; Joint Firearms Task Force; Major Theft Task Force; Joint Organized Crime Task Force; Child Exploitation investigations; Safe Streets Task Force; and Safe Streets Task Force. and Safe Streets Task Force. Portland is involved in the following task forces:  FBI Metro Gang Safe Streets; IRS Oregon Financial Crimes Task Force; and Columbia River Investigative Multi-Agency Enforcement Task Force Against Gangs (Crime Tag). And lastly, examples of task forces that Seattle is partnered in are: ATF Gun Crime Task Force; FBI Safe Streets Task Force; work with DEA on high intensity drug trafficking areas; Secret Service Electronic Crimes Task Force; and Internet Crimes Against Children Task Force.

[36] *See, e.g.*, N.Y.S. County Law § 700(1) ("it shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 29

92.     Finally, the justifications for Seattle's designation focused largely on a single situation in a small section of the City—CHOP—which was resolved in a matter of weeks. These proffered justifications ignore the fact that Seattle Police Department had only vacated the area in response to legitimate safety concerns, including an imminent arson attempt. At no time were law enforcement or first responders "precluded from entering the territory." In fact, after coordination of City departments by Seattle's Mayor, local law enforcement carried out a carefully planned operation to counteract criminal activity in the CHOP, and successfully concluded it without incident within a matter of hours.

> **d.      The criteria and stated justifications for the Designation are pretextual.**

93.     The Designation violates the APA because it is based on pretextual justifications. The Anarchist Memo identified the Cities as its targets before Attorney General Barr's issued his arbitrary designations. The Designation's arbitrary and irrational justifications are clearly a pretext for the President's determination to punish Cities that he disfavors.

94.     Several jurisdictions that experienced violent incidents during protests did not draw the President's ire and were not designated as anarchist. For example, in early May 2020, after armed protesters with assault rifles and tactical gear entered the Michigan State Capitol building in Lansing to protest the state's COVID-19 lockdown, President Trump tweeted that the armed protesters were "very good people" and that Michigan Governor Gretchen Whitmer should "give a little" and "[s]ee them, talk to them, make a deal."[37] Although local law enforcement did not prevent the occupation of a state government building by armed demonstrators, Lansing was not placed on the list of anarchist

---

[37] Sara Burnett, *"A Bunch of Jackasses" or "Very Good People": Michigan Militia's Armed Protests Grab Coronavirus Spotlight*, CHICAGO TRIBUNE (May 2, 2020, 11:19 AM) https://www.chicagotribune.com/nation-world/ct-nw-michigan-militia-coronavirus-protests-20200502-l4tmmr74oze7tmo3dwwkfy2vpy-story.html (last accessed Sept. 28, 2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 30

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

jurisdictions. Nor did the Attorney General impose the designation after the FBI charged an extremist group with conspiring to remove the Governor from office and kidnap her. [38]

95.     After a white supremacist murdered a 32-year-old woman who was protesting a white nationalist rally in Charlottesville, Virginia in 2017, President Trump commented that "there's blame on both sides" and "you also had people that were very fine people, on both sides."[39] While Seattle received its Designation in part because of two murders, days apart, within the CHOP area, Charlottesville was not designated an anarchist jurisdiction.

96.     Moreover, cities with far worse shooting and murder rates than the Cities also are not targeted by the Anarchist Memo or designated as anarchist by Attorney General Barr.[40]

97.     The pretextual nature of the Designation is apparent from the fact that the consequence of the designation is punitive federal funding cuts. If the purpose of the Anarchist Memo and Designation were truly to protect the "lives and property" of residents from Cities descending into anarchy, (Anarchist Memo § 1),  the rational response would be to increase funding in order to support local government, not to cut funding that supports vital housing, services, transportation, and education at a time when the Cities are already contending with dramatic budget shortfalls caused by the COVID-19 pandemic.

95.     The pretextual nature of the Anarchist Memo is also evidenced by the President directly tying the notion of "anarchist jurisdictions" to partisan politics and his electoral campaign.

---

[38] Nicholas Bogel-Burroughs, Shaila Dewan and Kathleen Gray, *F.B.I. Says Michigan Anti-Government Group Plotted to Kidnap Gov. Gretchen Whitmer*, N.Y. Times (Oct. 18, 2020), https://www.nytimes.com/2020/10/08/us/gretchen-whitmer-michigan-militia.html (last accessed Oct. 21, 2020).
[39] *Remarks by President Trump on Infrastructure – Infrastructure & Technology*, WHITEHOUSE.GOV (Aug. 15, 2017, 3:58 PM), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-infrastructure/ (last accessed Sept. 28, 2020).
[40] *See supra,* note 33.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 31

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

For example, on July 2, Trump tweeted: "the Portland and Seattle 'protesters' . . . are sick and deranged Anarchists & Agitators who our great men & women of Law Enforcement easily control, but who would destroy our American cities, and worse, if Sleepy Joe Biden, the puppet of the Left, ever won. Markets would crash and cities would burn. Our Country would suffer like never before."[41] Similarly, on August 30, 2020, the President tweeted "When is Slow Joe Biden going to criticize the Anarchists, Thugs & Agitators in ANTIFA? When is he going to suggest bringing up the National Guard in BADLY RUN & Crime Infested Democrat Cities & States? Remember, he can't lose the Crazy Bernie Super Liberal vote!"[42]

> ### e.   The Designation Violates the Cities' Constitutional Rights, Powers, and Privileges.

96.     The Designation also violates the APA because, as discussed below, it is contrary to Separation of Powers, the Spending Clause, and the Tenth and Fifth Amendments of the U.S. Constitution.

## VIII. The Anarchist Memo and Designation Usurp Congress's Spending and Legislative Authority, Violating the Separation of Powers.

97.     The principle of separation of powers between the legislative, executive, and judicial branches, enshrined in our Constitution, is the foundational structure of American democracy. As James Madison wrote in Federalist No. 47, "When the legislative and executive powers are united in the same person or body . . . there can be no liberty, because apprehensions may arise lest THE SAME monarch or senate should ENACT tyrannical laws to EXECUTE them in a tyrannical manner."

---

[41] Donald J. Trump, @realDonaldTrump, Twitter, 8:05 PM, July 13, 2020, https://TWITTER.com/realdonaldtrump/status/1282647375257964544.
[42] Donald J. Trump, @realDonaldTrump, Twitter, 10:36 PM, Aug. 30, 2020, https://TWITTER.com/realdonaldtrump/status/1300261079071830019?lang=en.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 32

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

98.     In that bedrock structure of our nation's government, it is Congress, not the President, that, as Alexander Hamilton put it, "commands the purse." THE FEDERALIST, NO. 78; *see* U.S. Const. Art. I, § 8. This power, James Madison noted, may be "the most complete and effectual weapon with which any constitution can arm the immediate representatives of the people." THE FEDERALIST, NO. 58.

99.     Congress's power of the purse includes the exclusive power to attach conditions to the grant of federal funds. *City and County of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018). The Executive Branch has no power to refuse to spend funds that Congress has appropriated or to place conditions on federal funding unless Congress expressly supplies it with such authority. *Id.* at 1233–34.

100.     The Anarchist Memo and Designation blatantly violate this fundamental limitation on the Executive's power. Without pointing to a single source of statutory authority, Defendants have created a new federal funding condition to be applied to a potentially unlimited number of federal grant programs. Cities now must avoid being designated "anarchist jurisdictions"—pursuant to a set of shifting, ambiguous, and subjective criteria to be determined by the Attorney General at the time of designation—or risk losing federal funding critical to the Cities' daily operations.

101.     No act of Congress authorizes agencies to consider the Anarchist Memo's newly invented "anarchist jurisdiction" concept in disbursing federal grants, nor does any statute give the President or the Attorney General the right to determine which jurisdictions are eligible to receive federal funds, as the Anarchist Memo purports to do. Moreover, Republican lawmakers have attempted, but failed, to pass legislation to block federal funding to supposed "anarchist"

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 33

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

jurisdictions.[43] In violation of the separation of powers, the Memo purports to circumvent the legislature and advance by executive fiat legislation rejected by Congress.

102.     The fact that there is no legislative authority for considering the "anarchist jurisdiction" designation in the issuance of *any* federal grants is borne out by Defendants' first attempt to actually do so. As noted above, the FTA has announced, in a notice seeking applications for the $10 million Public Transportation COVID-19 Research Demonstration Grant Program, that it "*will review and consider applications for funding pursuant to this Notice in accordance with the President's [Anarchist Memo],* consistent with guidance from the Office of Management and Budget and the Attorney General and with all applicable laws."[44]

103.     This grant program is authorized under 49 U.S.C. § 5312, titled "Public transportation innovation," which has as its purpose "to provide assistance for projects and activities to advance innovative public transportation research and development." Nothing in that statute authorizes the FTA or any federal agency to restrict or disfavor an "anarchist jurisdiction" from receiving grants under the program, or to consider any of the factors listed in the Anarchist Memo and Designation, in issuing such grants. Not only are such considerations nowhere to be found in the statute, but they have nothing to do with its purpose. There is no nexus between shootings, political protests and public transportation research.

104.     Thus, the FTA lacks statutory authority to evaluate grant applications for the Public Transportation COVID-19 Research Demonstration Grant Program "in accordance

---

[43] *See supra*, note 32.
[44] *See supra*, note 27.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 34

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

with" the Anarchist Memo, and its announcement that it will do so violates the Separation of Powers.  It also establishes that the Cities face imminent harm as federal agencies begin to execute the President's directive.

## IX.   Defendants' Actions Violate the Spending Clause.

105.    Defendants' actions also exceed limits on the spending power, even if it were being wielded by Congress as the Constitution requires, and not the Executive Branch as is the case here. Congress's spending power is not unlimited; any funding conditions it imposes on state and local governments must (a) be unambiguously conveyed in advance; (b) be germane to the purpose of the funding program at issue; and (c) not be used to induce unconstitutional conduct. *See S. Dakota v. Dole*, 483 U.S. 203, 207-08, 210 (1987). Defendants' actions violate each of these limits.

   **a.    The funding conditions are ambiguous and impermissibly look backwards.**

106.    First, the Anarchist Memo and Designation violate the Spending Clause by promising to impose new, backward-looking funding restriction and basing those restrictions on ambiguous criteria. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously," in advance.  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). "The legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts" Congress's conditions.  *Id*. "There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it."  *Id*.

107.    Here, instead of announcing a funding condition for a particular grant and allowing cities to choose whether to meet it, Defendants acted in the reverse order:  first deciding that the Cities fail the condition—because they are "anarchist jurisdictions" based on

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 35

past alleged events—and *then* deciding what grants onto which it can impose that condition that the Cities have already failed. This is precisely how the FTA has proceeded with the COVID-19 public transportation research grant and it will necessarily be the case with every grant program that federal agencies attach the anarchist designation to in making funding decisions. Denying funding based on completed events—and based on criteria that were only announced *after* those events had occurred—flouts the core principle that local governments' acceptance of spending conditions must be both voluntary and knowing. This alone violates the Spending Clause.

108.    Moreover, the criteria for imposing an anarchist jurisdiction designation are vague, ambiguous, and subjective, making it impossible for cities to ascertain what specifically would be expected of them in order to avoid receiving, and keeping, the "anarchist" designation, even if they had been given the opportunity to do so.

109.    For example, the Anarchist Memo does not define "disempowers" or "defunds" in the third factor: "whether a jurisdiction disempowers or defunds police departments." Anarchist Memo § 3(b)(iii). The vague text begs the question of whether any reduction from past budget levels for police counts against a jurisdiction, or whether there is some threshold, and if so, how was it determined. As a result, and as borne out in the Designation itself, nearly any policy choice or budget reduction with which the Attorney General disagrees could trigger this factor.

110.    Similarly, the fourth factor—"whether a jurisdiction unreasonably refuses to accept offers of law enforcement assistance from the Federal Government" (Memo § 3(b)(iv))—is entirely subjective and unpredictable. "Reasonableness" is not defined and its determination left entirely to the Attorney General. Moreover, the Anarchist Memo does not specify whether a jurisdiction that accepts federal law enforcement assistance to combat a range of crimes—as New York City, Seattle,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 36

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and Portland do—will still fail this criterion unless it accepts *all* offers of federal law enforcement assistance. Indeed, despite the Cities' partnerships with federal law enforcement to combat gun violence, drug trafficking, human trafficking, gang violence and organized crime,[45] there is every indication that the Attorney General would deem the Cities' refusal of federal law enforcement assistance to police political protests expressing disfavored viewpoints an affront warranting the loss of federal funding.

111.    The fifth "factor"—"any other related factors the Attorney General deems appropriate" (Memo § 3(b)(v))—is a textbook illustration of a vague and ambiguous condition that provides no meaningful notice to cities as to what is expected of them. As described below, the Attorney General has taken this catch-all as license to cite cherry-picked crime statistics without any forewarning of the statistics to be considered or what sorts of changes in those statistics would be gauged to be indicative of anarchy, and without any explanation for either of those choices.

112.    Further, the Memo provides no explanation for how all these vague factors will be weighed in determining whether a jurisdiction is "anarchist."

113.    Aside from unquestioning submission to the President's will, or perhaps the election of Republican local leaders, cities and states cannot "ascertain what is expected of [them]" and cannot "voluntarily and knowingly accept[]" any funding conditions based on the anarchist designation. *Pennhurst*, 451 U.S. at 17.

**b.    The conditions are not germane to the purposes of the programs as to which funding would be restricted.**

114.    The Anarchist Memo and Designation also violate the Spending Clause by imposing funding conditions that are not germane to the purpose of the funds. *See South*

---

[45] *See, e.g.*, supra, note 36, for a list of NYPD-Federal task forces.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 37

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Dakota v. Dole*, 483 U.S. 203, 208–09 & n.3 (1987); *Cnty. of Santa Clara v. Trump*, 275 F. Supp. 3d 1196, 1214–15 (N.D. Cal. 2017).

115.    Defendants have identified *no* federal funding programs as to which an "anarchist jurisdiction" determination would be "germane" or "related." Rather, Defendants have threatened "all federal funds" without regard to subject matter. Indeed, the Anarchist Memo relates solely to law enforcement issues. Yet, law enforcement is the one area where the President has signaled that funding would *not* be cut, with federal officials telling journalists that "reductions to law enforcement" funding are not likely.[46]

116.    The Federal Government's first foray into defunding "anarchist jurisdictions" bears this out. The Designation is not germane to the purpose of the Public Transportation COVID-19 Research Demonstration Grant Program, which is to help public transit agencies "to develop, deploy, and demonstrate innovative solutions that improve the operational efficiency of transit agencies, as well as enhance the mobility of transit users affected by the COVID-19 public health emergency."[47]

           **c.    The Anarchist Memo and Designation seek to induce cities to violate protesters' First Amendment rights.**

117.    The spending power "may not be used to induce the states to engage in activities that would themselves be unconstitutional." *South Dakota*, 483 U.S. at 210.

118.    Here, while it is far from clear what specific actions by local governments the Anarchist Memo and Designation seek to induce overall, it is evident that one of the general objectives is to push—indeed, to compel— the Cities to unconstitutionally suppress First Amendment activity based on the content of the speech. *South Dakota*, 483 U.S. at 206.

---

[46] Steven Nelson, *Justice Dep't Brands NYC an "Anarchist Jurisdiction," Targets Federal Funds*, N.Y. POST (Sept. 21, 2020, 6:02 AM) https://nypost.com/2020/09/21/nyc-branded-an-anarchist-jurisdiction-targeted-for-defunding-doj/ (last accessed Sept. 28, 2020).
[47] *See supra*, note 27.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 38

Viewed in connection with the President's tweets and other actions, the Anarchist Memo and Designation plainly aim to coerce the Cities to suppress only political protests with which he disagrees. Indeed the President encouraged Michigan's governor to "see," "talk to," and "make a deal" with armed protestors ("very good people") who entered the State Capitol to protest COVID-19 restrictions,[48] but has consistently labeled BLM protesters as "anarchists" and "thugs" who deserve to be crushed with overwhelming, militaristic force.[49] This sort of viewpoint discrimination, if employed by the Cities to respond to protests, would plainly violate the First Amendment.

## X.   The Anarchist Memo and Designation Invade the Powers Reserved to Cities and States Under the Constitution.

119.   The Anarchist Memo and Designation invade the powers reserved to cities and states under the Constitution by coercively promising to restrict the Cities' eligibility for a broad range of federal funding unless they bow to the federal government's policy preferences regarding public safety strategies and police budgets.

120.   The Founders created a Federal Government with limited powers. To that end, the Constitution sets forth the specific powers of the Federal Government and the Tenth Amendment

---

[48] Sara Burnett, *"A Bunch of Jackasses" or "Very Good People": Michigan Militia's Armed Protests Grab Coronavirus Spotlight*, CHICAGO TRIBUNE (May 2, 2020, 11:19 AM) https://www.chicagotribune.com/nation-world/ct-nw-michigan-militia-coronavirus-protests-20200502-l4tmmr74oze7tmo3dwwkfy2vpy-story.html (last accessed Sept. 28, 2020).
[49] *See, e.g.*, Donald J. Trump,@realDonaldTrump, TWITTER, 11:54 AM, May 30, 2020, https://Twitter.com/realDonaldTrump/status/1266760009872007171; Donald J. Trump,@realDonaldTrump, TWITTER, 9:33 AM, June 2, 2020, https:// Twitter.com/realDonaldTrump/status/1267811637811187712; Donald J. Trump,@realDonaldTrump, TWITTER, 9:02 AM, June 3, 2020, https://Twitter.com/realDonaldTrump/status/1268166288993632256; Donald J. Trump,@realDonaldTrump, TWITTER, 11:45 PM, June 24, 2020, https://Twitter.com/realDonaldTrump/status/1275998584551374849; Donald J. Trump,@realDonaldTrump, TWITTER, 1:04 PM, June 25, 2020, https://Twitter.com/realDonaldTrump/status/1276199680938921985; Donald J. Trump,@realDonaldTrump, TWITTER, 1:29 PM, June 25, 2020, https://Twitter.com/realDonaldTrump/status/1276205906338824192; *Statement on CBP Response in Portland, Oregon*, U.S. Customs & Border Protection, July 17, 2020, https://www.cbp.gov/newsroom/speeches-and-statements/statement-cbp-response-portland-oregon.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 39

provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.

121.     Among the powers reserved to the states are plenary police powers and the powers to make laws and take action to protect public safety, order, health, and the general welfare. Maintenance of public safety and order, including policing protests and suppressing violent crime, are quintessential examples of the police power that the Constitution entrusts to states. Indeed, there is "no better example of the police power, which the Founders denied the National Government and reposed in the States." *United States v. Morrison*, 529 U.S. 598, 618 (2000). Similarly, enacting a municipal budget and allocating scarce funds among city agencies is the core of local governmental powers.

122.     Yet these are the very decisions that the Anarchist Memo and Designation have targeted, with the express purpose of invading this constitutionally reserved sphere of state and local control. Attorney General Barr stated, upon issuing the Designation, that his intention was to induce the Cities' elected officials to "reverse course" with respect to their public safety strategies, duly-enacted budgets, and prosecutorial choices. President Trump made clear that he "didn't put Chicago into our list" of anarchist jurisdictions because the city had allowed the deployment of "a lot of federal law enforcement inside of Chicago."[50] And, at least according to President Trump, Washington, D.C. avoided designation because its mayor supposedly told him that "she's willing to do whatever is necessary."[51]

123.     But the anti-commandeering doctrine of the Tenth Amendment makes clear that the Federal Government may not coerce local governments to conform to federal policy preferences in

---

[50] *Remarks by President Trump in Press Briefing*, *supra* note 15.
[51] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 40

the local exercise of the police power. In imposing funding conditions to influence the local exercise of the police power, not even Congress—much less the Executive Branch—may impose financial inducements so substantial as to "pass the point at which pressure turns into compulsion." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012) (quoting *South Dakota*, 483 U.S. at 211).

124.    The expansive scope of the funding threat the Anarchist Memo and Designation impose crosses the line between "pressure" and "compulsion." The Anarchist Memo highlights that the "Federal Government provides States and localities with *hundreds of billions of dollars* every year, which fund *a wide array of programs, such as housing, public transportation, job training, and social services*," declaring that the "[Trump] Administration will not allow Federal tax dollars to fund" what it deems "anarchist jurisdictions." Anarchist Memo § 1 (emphasis added). To that end, the Anarchist Memo directs *all* federal agencies to report to OMB "*all* Federal funds" provided to the Cities, or any components or instrumentalities of the Cities. *Id.* § 2 (emphasis added). And OMB has issued guidance directing agencies to include in that report "all sources" of federal funding "in fiscal years (FY's) 2018, 2019 and 2020" as well as estimates for fiscal year 2021.[52] The Anarchist Memo further orders the OMB director to guide agencies in blocking or disfavoring anarchist jurisdictions from receiving federal grants "to the maximum extent permitted by law." Anarchist Memo § 3(c).

125.    In public statements, Defendants have repeatedly proclaimed that anarchist jurisdictions "are not going to get taxpayer dollars," confirming the breadth of the funding threats.[53] OMB Director Vought has announced that the federal government is actively looking to restrict funding to anarchist jurisdictions in "*every grant program*" in which there may be federal discretion. He specifically identified community economic development and public transportation grants—

---

[52] *Memorandum to the Heads of Executive Departments and Agencies*, *supra* note 18.
[53] @RussVought45 (9:54 AM, Sept. 22, 2020), *supra* note 21; *see also* @realDonaldTrump (8:27 PM, Sept. 2, 2020), *supra* note 14; DEP'T OF JUSTICE, OFFICE OF PUBLIC AFFAIRS, *supra* note 16.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 41

which plainly have nothing to do with the subject of the Anarchist Memo—and now the FTA has announced that it will consider applications for COVID-19-related public transportation grants in accordance with the Anarchist Memo. Defendants' words and actions show that they have no intention of limiting the scope of defunding to matters related to crime and "anarchy."

126.     Thus, the entirety of the Cities' federal grants is threatened by Defendant's unlawful defunding plan. Each of the Cities receives substantial amounts of federal grant funding, reflecting a significant portion of each city's annual budget. This federal funding supports vital public services, including low-income housing, public transportation, and emergency relief and recovery and COVID-related public health efforts. This anticipated federal funding is included in the Cities' annual budgets, and because each of the Cities is required to balance its budget each year—the loss of federal funding would require budget cuts of equal measure.

127.     The threats come at a time when the Cities are under unprecedented financial strain due to the COVID-19 pandemic, thus magnifying the coercive effect of any threatened funding cuts. The Cities have already drawn down on their reserves and imposed dramatic budget reductions due to the pandemic. Indeed, the Cities are looking to the federal government for additional crucial assistance to avoid even deeper cuts. The loss of federal grant funding in these circumstances would be devastating.

## XI.    The Anarchist Memo and Designation have Deprived the Cities of their Fifth Amendment Due Process Rights.

95.     It is well-established that the constitutional vagueness standard applies to executive orders. *See, e.g., United States v. Williams,* 553 U.S. 285, 304 (2008). Characterizing this instead as a Presidential Memo is a distinction without a legal difference.  *See Doe 1 v. Trump,* 275 F. Supp.3d

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 42

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

167 (D.C. Cir. 2017)(applying the Fifth Amendment to a Presidential Memorandum) (vacated on other grounds).

96.     A law is unconstitutionally vague in violation of the Fifth Amendment of the United States Constitution if it fails to make clear what conduct it prohibits and if it fails to lay out clear standards for enforcement. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). Instead, due process requires that laws "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly […and] provide explicit standards for those who apply them." *Id.*  Here, the Criterion in the Anarchist Memo fail in both respects.

97.     While it seeks to punish the Cities for what is allegedly failing to sufficiently combat criminal activities, it offers no explicit standards for what would constitute acceptable levels of law enforcement activity.  For example, while New York City is placed on the list for the rate of shootings, shooting rates was neither implied nor listed as a consideration in the Anarchist Memo.

98.     The identified Criterion fare no better. To avoid designation as an Anarchist Jurisdiction, local law enforcement commanders are apparently expected to ignore the conditions on the ground in an emergency situation and, instead, attempt to conform with a vague and undefined presidential directive that they act in all but "exceptional circumstances" under which law enforcement may be "briefly withheld." Anarchist Memo, § 3(b)(ii). This is both a chilling concept and an impossible expectation to meet, given that there is no attempt to define what would be an exceptional circumstance or how long of a brief withholding would be acceptable to the federal government.

99.     Similarly, local jurisdictions are forbidden from actions which "disempower" local police, without any definition of what might be considered disempowerment. For example, as the local discussion continues about the appropriate way to provide services in a municipality, simply

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 43

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

moving the same service from a police department to the supervision of a different city department might constitute disempowerment in the eyes of the Attorney General. Without clear direction, city officials are faced with significant uncertainty as to how to direct local resources in a way that does not endanger access to federal funding.

100.    The last identified factor determining restrictions on federal funding is the most problematic from a Fifth Amendment perspective, as it allows for "any other factors the Attorney General deems appropriate." *Id*., § 3(b)(v).  This is not a vague standard, this is *no standard at all*, but rather unfettered, and unconstitutional, discretion.

101.    Further, the Fifth Amendment of the United States Constitution provides that the Federal Government may not deprive a person of their property interest without due process of law. U.S. Const., Amend. V. This imposes constraints, ordinarily in the form of notice and a pre-deprivation hearing. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To be owed due process, it must first be established that one possesses a cognizable property interest with which there is a legitimate expectation of entitlement. Here, the Anarchist Memo and Designation have implicated the Cities' protected property interest in grants to which they would otherwise be entitled. The Cities have a reasonable expectation of continued, uninterrupted, receipt of existing federal funds.

102.    Due process requires, at a minimum, that the Federal Government provide notice that is reasonably calculated to apprise the Cities of the pendency of an action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Defendants' actions fail to satisfy these requirements.

103.    None of the Cities have received an official communication from any branch of the federal government informing the city that it has been designated an Anarchist Jurisdiction. Instead, the Cities learned of their Designations by a press release posted to DOJ's website. Furthermore, the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 44

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

DOJ press release provided no explanation as to how each City violated specific statutes or federal funding conditions or a procedural mechanism to contest the findings—pre- or post-deprivation of federal grants.

104.    Simply put, the criteria for the Anarchist Designation is a random compilation of unrelated events in each of the Cities targeted by the President, chosen for political purposes and without regard for the uniquely local factors which influenced the policing and budget decisions by elected officials in each City.

105.    Courts faced with similar actions by this Administration in the past have held that a "complete lack of process violates the Fifth Amendment's due process requirements," notwithstanding language in a presidential directive (and contained in the Anarchist Memo) that it is to be implemented "consistent with the law," and when, like here, there is no notice of an unfavorable designation or impending cut to any funding, no established administrative or judicial procedure for Cities to be heard or challenge the action, or otherwise appeal any funding cuts, *see, e.g., County of Santa Clara v. Trump*, 250 F.Supp.3d 497, 536 (2017).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Administrative Procedure Act – *Ultra Vires*, Exceed Scope of Statutory Authority
(Defendants DOJ, Barr, OMB, Vought, DHS, Wolf)**

106.    Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

107.    The APA requires courts to hold unlawful and set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

108.    In consultation with Defendants Vought and Wolf, the Attorney General made the Designation and provided justifications for the Designation without any statutory authority.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 45

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

109.    Defendants' action violates the APA.

**SECOND CLAIM FOR RELIEF**
**Administrative Procedure Act – Arbitrary and Capricious Agency Action**
**(Defendants DOJ, Barr, OMB, Vought, DHS, Wolf)**

110.    Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

111.    The APA requires courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

112.    Pursuant to the Anarchist Memo, the Cities have been designated as "anarchist jurisdictions" for purposes of restricting and disfavoring their federal funding.

113.    The criteria used to designate a jurisdiction as anarchist are not based in any statute.

114.    The criteria used to designate a jurisdiction as anarchist are vague, undefined, nebulous, and unrelated to the to the identification of jurisdictions that have "permitted violence and destruction of property to persist and have refused to undertake reasonable measures to counteract criminal activities."

115.    The Designation is premised on justifications that are either unsupported or contradicted by the evidence, and the Attorney General fails to consider relevant facts and important aspects of the problem.

116.    The purported justifications for the Designation are pretext.

117.    The Designation is a final agency action that is arbitrary and capricious, has inflicted continuing injury on the Cities, and violates the APA.

**THIRD CLAIM FOR RELIEF**
**Violation of the Administrative Procedure Act by Violation of the Constitution**
**(Defendants DOJ, Barr, OMB, Vought, DHS, Wolf)**

118.    Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 46

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

119.     The APA requires courts to hold unlawful and set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

120.     The Designation also violates the APA because it violates the Constitutional separation of powers, Spending Clause, and the Tenth and Fifth Amendments.

**FOURTH CLAIM FOR RELIEF**
**Separation of Powers**
**(All Defendants)**

121.     Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

122.     The "power of the purse" resides with Congress and it includes the exclusive power to attach conditions to the grant of federal funds.

123.     Defendants unlawfully usurp Congress's spending and legislative powers by using the Anarchist Memo and Designation to direct federal agencies to place conditions on federal funding without delegated statutory authority.

124.     Defendants FTA and Williams violate the separation of powers by using the Anarchist Memo and Designation as a factor in assessing applications for the Public Transportation COVID–19 Research Demonstration Grant Program, without delegated statutory authority.

125.     Defendants' actions violate the Constitutional separation of powers.

**FIFTH CLAIM FOR RELIEF**
**Spending Clause**
**(All Defendants)**

126.     Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

127.     The Anarchist Memo and Designation impose new, retroactive funding restrictions based on ambiguous criteria.

128.     The Anarchist Memo and Designation impose conditions that are not germane to the purpose of any federal grant program.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 47

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

129.    The Anarchist Memo and Designation seek to induce cities to act unconstitutionally by discriminating based on viewpoint in responding to protests.

130.    Defendants FTA and Williams violate the spending clause for these same reasons, by using the Anarchist Memo and Designation as a factor in assessing applications for the Public Transportation COVID–19 Research Demonstration Grant Program.

131.    Defendants' actions violate the limitations on the exercise of power under the Spending Clause.

**SIXTH CLAIM FOR RELIEF**
**Tenth Amendment**
**(All Defendants)**

132.    Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

133.    The maintenance of the safety and order of public streets are core police powers that the Tenth Amendment reserves to state and local governments.

134.    Similarly, policy decisions related to each of the Cities' budget and resource allocation are fundamental local decisions that the Tenth Amendment reserves to state and local officials.

135.    Defendants' actions coerce the Cities to conform to their policy preferences in the exercise of the fundamentally local police power.

136.    Defendants' actions violate the Tenth Amendment.

**SEVENTH CLAIM FOR RELIEF**
**Fifth Amendment – Void for Vagueness and Procedural Due Process**
**(All Defendants)**

137.    Plaintiffs re-allege and incorporate by reference all other paragraphs of the Complaint.

138.    Under the Fifth Amendment of the United States Constitution, the Federal Government may not deprive any person of property without due process of law. U.S. Const.,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 48

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Amend. V. Further, a law must provide fair notice of what is prohibited and explicit standards; without clear standards, the Anarchist Memo is unconstitutionally vague.

139.     The Cities have a constitutionally protected property interest in the federal funds they rely on to provide essential services to millions of residents. The Cities have established property interests, governed by rules and mutually explicit understandings with the federal government that cannot be arbitrarily revoked without prior notice and an opportunity to be heard.

140.     Wholly absent from the Anarchist Memo is a procedural mechanism to provide designated jurisdictions with clear official notice or any opportunity to challenge, or meaningful opportunity to dispute, the designation or appeal resulting restrictions on federal funds.

141.     Without clear standards, notice, and neither a pre- or post-deprivation opportunity to be heard, the Cities have been deprived in two distinct ways of their due process rights as required by the Fifth Amendment.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment as follows:

A.     Declare that the Designation violates the Administrative Procedure Act

B.     Declare that the Anarchist Memo and Designation violate Separation of Powers;

C.     Declare that the Anarchist Memo and Designation violate the Spending Clause

D.     Declare that the Anarchist Memo and Designation violate the Tenth Amendment;

E.     Declare that the Anarchist Memo and Designation violate the Due Process Clause of the Fifth Amendment;

F.     Enjoin DOJ, Barr, OMB, and Vought from taking any further steps to carry out the Anarchist Memo;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 49

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

G.      Enjoin the FTA and Williams from considering the Anarchist Memo and Designation in issuing grants under the Public Transportation COVID–19 Research Demonstration Grant Program;

H.      Vacate the Anarchist Memo;

I.      Vacate the DOJ Designation of the Cities as "anarchist jurisdictions";

J.      Enter such preliminary and permanent injunctive relief as necessary to ensure the Defendants comply with the Constitution and federal law;

K.      Grant other relief as the Court may deem proper.

DATED: October 22, 2020                    Respectfully submitted,


                                           PETE HOLMES
                                           City Attorney, Office of the Seattle City
                                           Attorney


                                           By: */s/ Carolyn U. Boies*
                                           Carolyn U. Boies, WSBA# 40395
                                           Jessica Nadelman, WSBA# 27569
                                           *Attorneys for Plaintiff the City of Seattle, Washington*
                                           Seattle City Attorney's Office
                                           701 Fifth Avenue, Suite 2050
                                           Seattle, WA 98104
                                           Phone:  (206) 684-8200


                                           JAMES E. JOHNSON
                                           Corporation Counsel of the City of New York
                                           100 Church Street
                                           New York, NY 10007


                                           By: */s/ Tonya Jenerette*
                                               Tonya Jenerette (*pro hac vice* motion to be
                                               filed), NY Bar No. 2686004
                                               Cynthia Weaver (*pro hac vice* motion to be
                                               filed), NY Bar No. 5091848
                                               Aaron Bloom (*pro hac vice* motion to be

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 50

filed), NY Bar No. 4247714
100 Church Street
New York, NY 10007
Tel. (212) 356-4055
tjeneret@law.nyc.gov

*Attorneys for Plaintiff the City of New York*

City Attorney, Portland Office of the City
Attorney

By: *s/ Anne Milligan*
Anne Milligan, WSBA# 48994
*Attorneys for Plaintiff the City of Portland,*
*Oregon*
Portland City Attorney's Office
1221 SW 4th Avenue, Room 430
Portland, OR 97204
Tracy Reeve (*pro hac vice* motion to be filed)
Robert Taylor (*pro hac vice* motion to be filed)
Denis Vannier (*pro hac vice* motion to be filed)
Naomi Sheffield (*pro hac vice* motion to be
filed)
Portland City Attorney's Office
1221 SW 4th Avenue, Room 430
Portland, OR 97204
(503) 823-4047

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF- 51

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200